IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MORRIS J. PETTIGREW, SR., #359809　　　*

　　　　Plaintiff　　　　　　　　　　　　*

　　v.　　　　　　　　　　　　　　　　　*　CIVIL ACTION NO. GLR-12-1681

KATHLEEN S. GREEN　　　　　　　　　*
OFFICER M. ENNIS
OFFICER WINSLOW　　　　　　　　　　*
CONTROL OFFICERS *WEST COMPOUND*
　　　　　　　　　　　　　　　　　　　　*
　　　　Defendants
　　　　　　　　　　　　　　　　　　　***

**<u>MEMORANDUM</u>**

I.  Background

On June 7, 2012, the Court received this 42 U.S.C. § 1983 Complaint for damages from Morris J. Pettigrew, Sr., an inmate currently housed at the Western Correctional Institution in Cumberland, Maryland.  Plaintiff contends that while housed at the Eastern Correctional Institution ("ECI") on January 23, 2010, he was attacked by eight to ten inmates after the lunch meal had concluded while inmates were lined up in a "meal movement."  ECF No. 1.  He contends that only one officer, Correctional Officer Winslow ("Winslow"), was present to cover security during the meal in the facility and Winslow retreated to a corner of the dining hall in an attempt to avoid attacks from the inmates.  Plaintiff claims that after the attack began, Correctional Officer M. Ennis ("Ennis") entered the dining hall and upon witnessing Plaintiff with his back in a corner and a group of inmates approaching, unnecessarily sprayed mace "in the side" of Plaintiff's face.  He complains Winslow stood around and took no action while Ennis grabbed Plaintiff by the collar and allowed him to be beaten by the inmates, "essentially aiding and assisting in the assault."  He alleges that he was covered with chemical spray and had been cut and stabbed with homemade knives before he was taken out of the area by another officer.

Plaintiff further claims that he was placed in a room for 15 minutes before the blood and chemical spray was rinsed from his eyes. He contends that photographs were taken of his chest and back, but not of his head, arm, leg and hip injuries. Plaintiff complains he was not given medical assistance and had to rinse his own eyes. He states that he was assigned to administrative segregation for one week and was not given soap and a shower to "decontaminate" himself until three or four days had passed. ECF No. 1. Plaintiff contends that after three days he was released from segregation after his attackers informed ECI staff that he was not a gang-affiliated member and had been attacked by mistake. He claims the he has not received treatment for symptoms that have developed.[1] He seeks declaratory and injunctive relief, along with compensatory and punitive damages. Id.

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment[2] and Plaintiff has filed an Opposition thereto.[3] ECF Nos. 14 and 16. The matter is ready for consideration and may be determined without oral hearing. See Local Rule 105.6 (D. Md. 2011).

## II.  Standard of Review

Because matters outside the pleadings shall be considered, Defendants' Motion shall be treated as a motion for summary judgment. Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] Plaintiff filed a civil rights Complaint against the medical contractor and medical staff for the alleged denial of medical care after his assault. See Pettigrew v. Corizon, et al., Civil Action No. GLR-12-1713.

[2] Plaintiff's Request for the Entry of Default Judgment (ECF No. 18) shall be denied.

[3] Plaintiff has submitted a Motion for Leave to File an Amended Complaint, filed after his receipt of Defendants' dispositive motion. He seeks to add Sgt. Bundick, Sgt. Ramos, Correctional Officer II J. Hudson and Correctional Officer II Persinger as Defendants. ECF No. 16.

law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to. . .the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644–45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986)).

In Anderson, 477 U.S. at 249, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Id. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. See Celotex Corp., 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

III.   Discussion

Failure to Protect and Excessive Force Claims

A. Facts

There is no dispute that on January 23, 2010, while inmates from ECI Housing Unit #1 were exiting the dining hall, some inmates began to fight. ECF No. 14, Ex. 1 at Balderson Decl.. Officers observed Plaintiff[4] being attacked by approximately 12 inmates at the dining hall door. Lt. Blake gave a direct order for the inmates to stop fighting and warned them that non-compliance would result in his use of pepper spray. The inmates did not comply and in response, Lt. Blake, Sgt. Ramos, and Sgt. Bundick, along with Correctional Officers Hudson, Persinger, and Cullota, each deployed a one second burst of pepper spray into the group of fighting inmates. The inmates then became compliant, were handcuffed, and were taken to the medical unit. Defendants maintain that all inmates, including Plaintiff, were treated for pepper spray exposure. After being released from the medical unit, all of the involved inmates were placed on administrative segregation. Id.

---

[4]   According to the reports, Plaintiff was deemed to be a designated member of the Bloods gang. ECF No. 14, Ex. 1 at pp. 4, 18, & 23.

Following this incident, officials commenced a Use of Force investigation. ECF No. 14, Ex. 1 at pp. 3-75. Lt. Clayton concluded that the use of force in this incident was in accordance with state prison policy. Id., Ex. 1 at pp. 9-10.

Defendants argue that the Complaint "is completely devoid of any specific factual allegations against [Warden] Green." They assert that she had no personal involvement in the incident at issue and cannot be held liable under a respondeat superior theory. In addition, Defendants assert the Plaintiff has failed to articulate any facts which show that Winslow had any prior knowledge of a specific threat to Plaintiff presented by this group of inmates or that Winslow failed to act reasonably. Winslow affirms that he did not have prior knowledge of a threat against Plaintiff and did not realize that Plaintiff was the victim until he responded to the fight. Id., Ex. 2 at Winslow Decl.. Winslow maintains that at the time of the incident he was directing the exit of inmates from the dining hall and when he saw the fight among the inmates he headed toward them. It was only as he got closer that he realized Plaintiff was being attacked. Several other correctional officers entered the dining hall to assist in breaking up the fight and they applied short bursts of pepper spray into the group when the inmates refused to follow orders to stop fighting.[5] Id.

Defendants further affirm that Plaintiff has failed to set out a claim of excessive force against Ennis, as the record shows that Ennis was, at the time of the incident, eating lunch in the officer's dining hall. Id., Ex. 3 at Ennis Decl.. He heard a call come over the radio reporting an inmate altercation in the inmate dining hall and responded due to the proximity of the two dining halls. Upon his arrival in the inmate dining hall, Ennis saw that several other correctional officers were on the scene and handcuffing inmates. He remained on the scene to assist with crowd control. Once

---

[5]  Plaintiff complains the ECI staff violated prison policy as to the number of inmates who may congregate together at one time. The rule in question, however, governs inmate congregation in the recreation area, not the dining hall, and does not apply in this case. See Rule 503-21(e) of the ECI Inmate Orientation Manual. ECF No. 14, Ex. 1 at pp. 68 & 70.

the involved inmates had been handcuffed and escorted to the medical unit, Ennis left the inmate dining hall.  The record shows that Ennis did not use pepper spray against Plaintiff or any of the other inmates.  ECF No. 14, Ex. 3 at Ennis Decl..  According to the record, at no time was Ennis involved in physically restraining any of the inmates, including Plaintiff.  Id.  He affirms he did not strike Plaintiff in any way or hold him down in an attempt to assist the assaulting inmates.

In his Opposition, Plaintiff claims that a reasonable officer would have concluded that he was not in fact fighting, but was trying to escape from the Special Threat Group ("STG") Dead Man Incorporated ("DMI") members who were attacking him.  He affirms that the reasonable act would have been for the officers to deploy the chemical agent against his assailants directly, not at him as the victim.  In sum, he maintains that there was no need to apply the mace on him directly as he did not pose a threat to the safety and security of the staff, other inmates, or the institution.  ECF No. 16.  Plaintiff states that the officers had the opportunity to assess "who was in danger and who posed a threat" when they entered the dining hall.  He claims that photographs show that he was saturated from head to toe with the chemical spray.  Again claiming that he was obviously the victim, Plaintiff contends he should not have been sprayed and officers did not have a "blank check" to use force.  Id.  He reiterates his claim that Officer Winslow saw the assault occurring yet took no action.  Finally, he claims that officers in the control room, seeing a group of inmates from an STG, should have taken action.  Id.

B. Analysis

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must

both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302-303 (4th Cir. 2004); Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997).  Under Fourth Circuit law, liability under the Farmer standard requires two showings.  First, the evidence must show that the officials in question subjectively recognized a substantial risk of harm.  It is not enough that the officers *should have* recognized it; they actually must have perceived the risk.  See Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir. 1997).  Second, the evidence must show that the officials in question subjectively recognized that their actions were "inappropriate in light of that risk." Id.  As with the subjective awareness element, it is not enough that the officials *should have* recognized that their actions were inappropriate; the officials actually *must have* recognized that their actions were insufficient.  See Brown v. Harris, 240 F.3d 383, 390-91 (4th Cir. 2001).  Further, to state a claim for damages, the inmate must show a serious physical injury.  See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); see also Babcock v. White, 102 F.3d 267, 272-73 (7th Cir. 1996).

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response.  See Whitley v. Albers, 475 U.S. 312, 321 (1986).  In this circuit the use of pepper spray or tear gas in correctional facilities is carefully scrutinized because of their "inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." Williams v. Benjamin, 77

F.3d 756, 763 (4th Cir. 1996). When reviewing a claim that the use of pepper spray or mace constituted excessive force, "[t]he question of liability turns upon the circumstances in which the mace was used." Justice v. Dennis, 834 F.2d 380, 383 (4th Cir. 1987) (en banc), vacated on other grounds, 490 U.S. 1087 (1989). Accordingly, although it is not per se unconstitutional for guards to apply pepper spray at inmates, it is necessary to examine the totality of the circumstances, including the provocation, the amount of pepper spray used, and the purposes for which the pepper spray is used to determine the validity of the use of the gas in the prison environment. Id. Indeed, the absence of significant injury alone is not dispositive of a claim of excessive force. See Wilkens v. Gaddy, 130 S. Ct. 1175, 1178-1179 (2010) (holding the core judicial inquiry when a prisoner alleges excessive force is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. Id.

Plaintiff has been called upon to rebut Defendants' Declarations and materials with his own verified documents to establish a genuine dispute of material fact. He has failed to so do. The facts show that Plaintiff was caught in a spontaneous fight when he was attacked by several DMI gang members while exiting the ECI dining hall. The inmates were ordered to stop fighting and warned that pepper spray would be applied if they failed to obey the direct order. They did not stop. A one second burst of pepper spray was applied by several officers into the faces of the inmates, who then complied with the directive to cease their actions. Plaintiff received pepper spray to his face and was taken to the medical department to be treated for pepper spray exposure. Three inmates, including Plaintiff, were additionally treated for wounds to their bodies. Plaintiff was treated for a

small puncture wound to his left shoulder.[6]

Given the facts presented in the record and the applicable legal standards, it would be improper to find fault with actions of the line officers. Plaintiff has not shown that the named Defendants had previous knowledge of threats to Plaintiff's life and safety from an STG at ECI. Spontaneous fights involving inmate-on-inmate contact all too frequently occur in prison settings. Faced with an altercation involving ten to twelve inmates the officers gave a direct order to cease fighting and warned that pepper spray would be applied if the inmates were non-compliant. The order was ignored. Short bursts of pepper spray were applied to the inmates. Unfortunately, Plaintiff was caught in the midst of this altercation. To suggest that the officers acted unreasonably by not applying the pepper spray around Plaintiff is illogical given the circumstances. Although the officers were regrettably unable to restore order before Plaintiff was injured, this alone does not subject the officers to liability.

Defendant Green would also be entitled to judgment on the basis that as ECI Warden, she was not personally involved in the events surrounding Plaintiff's claims. In cases brought under 42 U.S.C. § 1983, there is no respondeat superior liability. This means that there must be personal involvement by Defendants in the alleged violation. A supervisor will only be held liable if the Plaintiff can demonstrate that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F.3d 791, 799 (4th

---

[6] Photographs seemingly show Plaintiff with a superficial puncture wound to his right shoulder. ECF No. 14, Ex 1 at p. 42.

Cir. 1994). Because Plaintiff's claim fails as a matter of law, the Court need not concern itself with the question of who the proper Defendant or Defendants might be.[7]

IV.  Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment shall be granted. Judgment will be granted in favor of Defendants and against Plaintiff. A separate Order follows.

April 12, 2013

/s/
_____
George L. Russell, III
United States District Judge

---

[7] For these reasons Plaintiff's Motion for Leave to File an Amended Complaint to add the names of the officers involved in the application of force is denied as moot.